**Alan J. FROMM, Appellant**

v.

**MVM, INC.; Attorney General of the United States in his official capacity as Attorney General of the United States and Chief Administrative Officer of the United States Department of Justice; Director of the United States Marshal Service.**

No. 06–1410.

United States Court of Appeals, Third Circuit.

Argued Nov. 30, 2009.

Filed: March 23, 2010.

---

Jeffrey C. Dohrmann (Argued), Rieders, Travis, Humphrey, Harris, Waters & Waffenschmidt, Williamsport, PA, for Appellant.

Jason M. Branciforte, Katherine A. Goetzl (Argued), Littler Mendelson, Washington, DC, for Appellee, MVM, Inc.

Marleigh D. Dover, Eric Fleisig–Greene (Argued), United States Department of Justice, Civil Division, Washington, DC, for Appellees, Attorney General of the United States and United States Marshal Service.

Before: FISHER, HARDIMAN and STAPLETON, Circuit Judges.

OPINION OF THE COURT

FISHER, Circuit Judge.

Plaintiff Alan Fromm was terminated from his employment as a court security officer following his medical disqualification for a hearing impairment in his right ear. Fromm appeals the District Court's grant of summary judgment in favor of all defendants on his claims under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101–12213, the Rehabilitation Act, 29 U.S.C. § 794, the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 955(a), and the procedural due process clause of the Fifth Amendment. For the reasons stated herein, we will affirm in part, reverse in part, and remand for further proceedings.

I.

We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

Alan Fromm was employed by MVM, Inc. ("MVM") from February 1998 through October 2002, as a court security officer ("CSO") at the federal courthouse in Williamsport, Pennsylvania. MVM provid-

ed security services for federal courts in the Third Circuit through its contract with the United States Marshals Service ("USMS"). The contract sets forth medical standards for individual CSOs and gives USMS "the right at all times to determine the suitability of any Contractor employee to serve as a CSO." (App.107.) Under the contract, "[a]ny decision to continue a Contractor employee in a CSO capacity will be made solely by [USMS]." (*Id.*) Fromm, who has suffered from reduced hearing in his right ear, performed his duties as a CSO without the assistance of a hearing aid.

In 2002, USMS instituted a new medical requirement that CSOs had to possess certain hearing capacities without the use of a hearing aid. The new medical standards were developed by Dr. Richard Miller, Director of Law Enforcement Medical Programs, at the request of the Judicial Conference of the United States. Dr. Miller identified twenty-nine CSO job functions, six of which related to hearing: comprehending speech during face to face conversations, over the telephone, over the radio, and outside the range of sight; hearing sounds that require investigation; and determining the location of sound. According to Dr. Miller, each of the hearing functions must be met without the use of a hearing aid. However, if a CSO passes the hearing tests unaided, he may be permitted to wear a hearing aid on the job. In 2001, the Judicial Conference and USMS reviewed and adopted the Miller Report as the new medical standards for CSOs (the "CSO hearing standards").

Pursuant to the CSO hearing standards, a government physician initially determined on April 30, 2002, that Fromm was no longer medically qualified to serve as a CSO based on the reduced hearing in his right ear. Fromm took a second hearing test, and his results were reviewed by a new government physician on October 3, 2002, who also determined that Fromm was medically disqualified under the new CSO hearing standards. After USMS notified MVM of its disqualification determination, MVM terminated Fromm on October 17, 2002.

Under the terms of MVM's contract with USMS, a CSO removed for failure to meet medical requirements is afforded no notice and hearing. Nonetheless, Fromm sent a letter requesting review of his termination to Steve Gottrich, MVM's Senior Operations Coordinator, on October 23, 2002. Additionally, in November 2002, Fromm obtained a hearing aid and sent MVM the results of a hearing test that he took with his hearing aid. Fromm argued that the new test results demonstrated he could meet the hearing functions required of a CSO. MVM submitted the results of this test to the Marshals Service on December 3, 2002, and requested that the agency reconsider its decision to disqualify Fromm from working as a CSO. Gottrich contacted USMS by telephone and was informed that Fromm's medical disqualification would not be reconsidered.

Fromm filed an administrative complaint against MVM with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") on November 19, 2002, alleging violations of the ADA and the PHRA.[1] In August 2003, Fromm wrote to the EEOC seeking to amend his complaint to include the Marshals Service, the United States Department of Justice, and the United States Attorney General as respondents. The EEOC replied that it lacked authority to investigate discrimination by

---

1. Fromm also filed a complaint under the Rehabilitation Act with the Department of Labor Office of Federal Contract Compliance Programs on or about July 7, 2003. This complaint was closed because Fromm had first filed with the EEOC.

federal entities and enclosed a form explaining the administrative procedures for such a complaint, which involved filing a complaint with the Equal Employment Office ("EEO") for the appropriate federal defendant. Fromm never filed an administrative complaint under the Rehabilitation Act with the USMS's EEO.

In June 2004, Fromm filed suit in the United States District Court for the Middle District of Pennsylvania against MVM, as well as the Director of USMS and the Attorney General of the United States (collectively the "Federal Defendants"), alleging his termination violated the ADA, the Rehabilitation Act, and the PHRA, as well as the substantive and procedural due process protections of the Fifth Amendment. *Fromm v. MVM, Inc.*, 2006 WL 133540, at *1 (M.D.Pa. Jan.10, 2006). The District Court dismissed a number of the claims, but permitted Fromm to proceed to the merits against MVM under the ADA, Rehabilitation Act, and PHRA and against the Federal Defendants under the Rehabilitation Act and procedural due process. *Id.* These claims were all limited to his theory that he was discriminated against for a "regarded as" disability.[2] *Id.*

Following discovery, MVM and the Federal Defendants each filed a motion for summary judgment on the remaining claims. Both motions were granted. The District Court reasoned that the Rehabilitation Act claims against all defendants failed because Fromm had failed to present sufficient evidence that he could perform the essential functions of the job, where one of those essential functions was unaided hearing in accordance with the

CSO hearing standards. *Id.* at *4–6. Because the remaining disability claims against MVM under the ADA and PHRA were premised on USMS's decision to disqualify Fromm, those claims were dismissed as well on the theory that MVM could not be liable for complying with USMS requirements if those requirements were not themselves unlawful. *Id.* at *6. Finally, the District Court held that the procedural due process claim failed because USMS provided Fromm sufficient process through the consideration of additional hearing tests. *Id.* at *7.

This timely appeal followed.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367. We have jurisdiction pursuant to 28 U.S.C. § 1291.

In reviewing a district court's grant of summary judgment, we apply the same test the district court applied. *Saldana v. Kmart Corp.*, 260 F.3d 228, 231 (3d Cir. 2001). Summary judgment is proper when, viewing the evidence in the light most favorable to the non-moving party and drawing all inferences in that party's favor, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* at 232; Fed.R.Civ.P. 56(c).

## III.

On appeal, Fromm raises three principal arguments: (1) that he exhausted all administrative remedies known to him and

---

**2.** Under the ADA, an "individual with a disability" includes not only an individual who "has a physical or mental impairment which substantially limits one or more of such person's major life activities," but also an individual who "is regarded as having such an impairment." 42 U.S.C. § 12102(3). The District Court correctly limited Fromm's theo-

ry to the latter "regarded as" disability because his hearing impairment is mitigated by corrective measures. *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 487, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999) *superseded by statute*, ADA Amendments Act of 2008, Pub.L. No. 110–325, 122 Stat. 3553 (2008).

should be excused from any further exhaustion requirements; (2) that his inability to appeal the basis for his termination deprived him of procedural due process; and (3) that letters submitted on his behalf by court officials demonstrating he had successfully performed his CSO position created a genuine issue of material fact as to whether unaided hearing was an "essential function" of the job. We will address these arguments in turn.

## A. Administrative Exhaustion

A party filing a claim under § 501 of the Rehabilitation Act must first exhaust the administrative remedies established under Title VII of the Civil Rights Act of 1964. *See* 29 U.S.C. § 794a(a)(1) (incorporating Title VII "remedies, procedures, and rights" into the Rehabilitation Act). An individual who believes he has suffered a violation of the Rehabilitation Act must contact an agency's EEO counselor within forty-five days of the complained of incident. 29 C.F.R. § 1614.105(a)(1). This contact sets into motion a chain of events which will lead to either an informal resolution of the claim or a dismissal by the EEO, at which point an employee may contact the EEOC and seek the right to sue in district court. 29 C.F.R. §§ 1614.106–.108.

Fromm does not contest that he has failed to avail himself of these required steps. Rather, he seems to argue that administrative exhaustion would have been futile because, as the USMS EEO counselor submitted to the Court, "EEO counselors are not qualified to review the substance of medical determinations." (App. 212–13.) Thus, Fromm argues "there was no real EEO process available to [him] against the USMS." (Fromm Br. 11.)

 Although Fromm cites no law for his arguments, we held in *Wilson v. MVM, Inc.*, 475 F.3d 166 (3d Cir.2007), that the Rehabilitation Act's exhaustion requirements were prudential as opposed to jurisdictional and therefore subject to a futility exception where a party provides "a clear and positive showing" of futility. *Id.* at 175. Fromm offers no such showing here. While EEO counselors at USMS could not review the substance of medical determinations, they at least had the authority to investigate the reasons for a medical disqualification or correct any errors in the procedures used to evaluate Fromm's hearing. To facilitate these ends, Fromm was specifically informed by the EEOC of the process for filing a Rehabilitation Act complaint against the Federal Defendants. His opinion that partaking of the available process would not have resulted in a favorable outcome does not excuse procedural non-compliance.

Accordingly, we hold that Fromm failed to exhaust his administrative remedies, and we will affirm the District Court's order granting summary judgment to the Federal Defendants on the § 501 Rehabilitation Act claims.

## B. Procedural Due Process

Fromm claims that MVM's failure to provide a substantive appeal of his medical disqualification violated his right to procedural due process under the Fifth Amendment. We considered and rejected an identical argument in *Wilson* and accordingly will address it only briefly here. *See* 475 F.3d at 177–79.

 As we have repeatedly noted, at a minimum, due process requires notice and a hearing. *Id.* at 178. However, the extent of the notice and hearing depends on balancing three interests: (1) the private interest at stake, (2) the risk of error in the procedure used compared with the degree of accuracy of additional procedures, and (3) the government's interest. *Id.* (citing *Mathews v. Eldridge*, 424 U.S. 319, 334–35, 96 S.Ct. 893, 47 L.Ed.2d 18

(1976)). MVM notified Fromm that he was potentially subject to medical disqualification, provided a medical evaluation, and permitted Fromm to provide an additional evaluation from a physician of his choosing. We agree with the District Court that additional proceedings would not have increased the accuracy of the medical review. *See id.* at 179 ("A more rigorous process would not significantly enhance the accuracy of the medical qualification process.").

We will therefore affirm the District Court's grant of summary judgment on Fromm's procedural due process claim.

## C. Rehabilitation Act, ADA, and PHRA Claims Against MVM

■■■ An employee asserting a claim for disability discrimination must show (1) that he has a disability, (2) that he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation by the employer, and (3) that he was terminated. *Shiring v. Runyon*, 90 F.3d 827, 831 (3d Cir. 1996).[3] The District Court granted summary judgment because it held that Fromm had failed to demonstrate he could perform the "essential functions" of the job—specifically that he could not meet the CSO hearing standards without the use of a hearing aid. Fromm argues on appeal that his past satisfactory performance of the CSO job functions without the use of a hearing aid while suffering from reduced hearing in his right ear creates a question of fact as to whether the unaided hearing standards are an "essential function" of the CSO position.

■■■ We agree with Fromm that, based on the record in this case, he has created a dispute of material fact over whether the unaided hearing requirements are an essential function of the CSO position such that summary judgment on that basis was improper. Fromm submitted deposition testimony of supervisors at MVM confirming Fromm's satisfactory job performance, as well as his own testimony regarding his prior performance, and letters from various court officials attesting that he had successfully performed his CSO functions for a number of years with the use of a hearing aid. We have previously held that evidence of successful job performance may suffice to create a dispute of material fact over what constitutes an "essential function." *See Skerski v. Time Warner Cable Co.*, 257 F.3d 273 (3d Cir.2001). In *Skerski*, a cable installer was terminated for not climbing ladders as a the result of an anxiety disorder even though he had been performing the job for a number of years without climbing. *Id.* at 276–77. The district court granted summary judgment, concluding that climbing was an "essential function" of the cable installation position, based in part on the written job description of the cable installer position which included "repetitive ... pole climbing ... and ladder climbing." *Id.* at 275, 277. We reversed, holding, "Skerski's ability to perform as an installer technician for more than three years without climbing might lead a reasonable juror to infer that Skerski's inability to climb had no adverse consequences for his employer, a factor that is relevant to determining what is an essential function." *Id.* at 283.

USMS argued at oral argument that the unaided hearing standards are an essential function of the CSO position because they test a CSO's ability to perform in emer-

---

**3.** In addressing the merits of Fromm's disability discrimination claims, we need not distinguish between the three applicable statutory schemes. We have previously held that the ADA and the Rehabilitation Act apply the same standard to determine liability, *Antol v. Perry*, 82 F.3d 1291, 1299 (3d Cir.1996), and that the ADA and PHRA are interpreted coextensively, *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir.1999).

gency situations where a hearing aid could malfunction or become dislodged. USMS points out that Fromm's ability to perform in the ordinary course does not refute its position that he would be unable to perform in an emergency. While defining the scope of the essential function as "unaided hearing in the event of an emergency" may well change the summary judgment calculus, arguments are not evidence, and we find no support in the record for this position. USMS has presented no evidence that the hearing standards were intended for emergency situations, nor demonstrated that emergency situations are central or imperative to the CSO position. *See* 29 C.F.R. § 1630.2(n)(3)(iii) ("essential functions" under the ADA include consideration of "[t]he amount of time spent on the job performing the function"). And even if we accepted that the hearing standards themselves were imperative to an emergency situation, USMS has provided little beyond conjecture in support of its argument that those standards cannot be accommodated by a hearing aid. In fact, MVM has consistently maintained that it "did not believe that Fromm was unqualified to continue working as a CSO because of his hearing loss." (MVM Br. at 8.) Accordingly, we hold that, under the evidence presented in this case, Fromm has created a dispute of material fact as to whether the unaided hearing standards are an "essential function" of the CSO position.

We turn then to another prong of the disability discrimination analysis—whether Fromm was "disabled" within the meaning of the applicable statutes. A claimant under the ADA and the Rehabilitation Act must prove that he has a physical impairment that limits a major life activity, has a record of such impairment, or is "regarded as" having such an impairment. 42 U.S.C. § 12102(2) (2008) (ADA); 29 U.S.C. § 705(20)(B) (2008) (Rehabilitation Act). Fromm alleges that MVM and the Federal Defendants "regarded" him as being impaired, meaning they "mistakenly believe[d] that [Fromm], has a physical impairment that substantially limits one or more major life activities" or "mistakenly believed that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton*, 527 U.S. at 489, 119 S.Ct. 2139.

■ As we held in *Wilson*, MVM, through its own conduct, did not "regard" Fromm as disabled within the meaning of the ADA:

> The undisputed evidence shows that MVM did not consider the appellants in any way disabled and would have reinstated them immediately if the USMS would have determined the appellants were medically qualified. As a matter of law, MVM did not regard the appellants as impaired within the meaning of the ADA.

475 F.3d at 179. This conclusion, on identical relevant facts, absolves MVM of liability under the definition provided by 42 U.S.C. § 12112(b)(3), which forbids an employer from "utilizing standards, criteria, or methods of administration [ ] that have the effect of discrimination on the basis of disability."

■ Fromm correctly notes, however, that the ADA imposes liability not only for an employer's direct discriminatory standards, but for discrimination carried out via a contractual agreement with a third party. Section 12112(b)(2) defines illegal discrimination as "participating in a contractual or other arrangement or relationship that has the effect of subjecting a covered entity's qualified applicant or employee with a disability to the discrimination prohibited by this subchapter." The purpose of this provision is to ensure that an employer "may not do through a contractual or other relationship what it is

prohibited from doing directly." 29 C.F.R. pt. 1630, App. § 1630.6.

If MVM, via its contract with USMS, has subjected Fromm to "discrimination prohibited by [the ADA]," it cannot rest on blind contractual compliance to escape liability for discrimination. *See Holiday v. City of Chattanooga*, 206 F.3d 637, 645 (6th Cir.2000) ("Employers do not escape their legal obligations under the ADA by contracting out certain hiring and personnel functions to third parties."); *cf. Powers v. Ala. Dept. of Educ.*, 854 F.2d 1285, 1294–95 (11th Cir.1988) (holding under Title VII that "an employer cannot delegate several aspects of its promotion procedure to another agency such as SPD and then escape liability if that agency develops discriminatory practices" and collecting cases).[4]

Thus, even though USMS is properly dismissed from the case due to Fromm's failure to exhaust administrative remedies, the question of MVM's liability turns on, *inter alia*, whether USMS engaged in "discrimination prohibited by [the ADA.]" Because various aspects of USMS's allegedly discriminatory conduct, including the question of whether USMS "regarded" Fromm as disabled, were not argued before this

Court and not considered by the District Court below, we will remand for further consideration of whether MVM is liable for "participating in a contractual or other arrangement or relationship that has the effect of subjecting a covered entity's qualified applicant or employee with a disability to the discrimination prohibited by [the ADA.]" 42 U.S.C. § 12112(b)(2).[5]

## IV.

For the foregoing reasons, we will affirm summary judgment for the Federal Defendants, reverse summary judgment for MVM on Fromm's ADA, RA, and PHRA claims, and remand for further proceedings consistent with this opinion.

STAPLETON, Circuit Judge, dissenting:

While I agree with initially all that is said by the Court, I nevertheless conclude that summary judgment for MVM was appropriate.

We explained the law that is controlling here in *Wilson v. MVM, Inc.*, 475 F.3d 166, 179 (3d Cir.2007) (brackets in original), a case with indistinguishable facts:

---

4. The potential application of § 12112(b)(2) was not addressed by this Court in *Wilson*. Accordingly, though we agree with our dissenting colleague that *Wilson* presented "indistinguishable facts," we are called in this instance to address a distinct legal argument: MVM's potential liability via its contract with USMS.

5. We respectfully disagree with the dissent's reliance on the Ninth Circuit decision in *Walton v. U.S. Marshals Service*, 492 F.3d 998 (9th Cir.2007). The court in *Walton*, relying on the Supreme Court decision in *Sutton*, held that disqualification under the USMS hearing standards cannot raise a dispute of material facts as to whether USMS regards that employee as disabled in a major life activity. *Id.* at 1007. *Sutton*, however, says only that an employer's implementation of

physical requirements alone does not suffice to support a claim of "regarded as" disability because many such qualifications, if not met, will not "rise to the level of an impairment." 527 U.S. at 490, 119 S.Ct. 2139. The Court goes on to hold, "An employer runs afoul of the ADA when it makes an employment decision based on a physical or mental impairment, real or imagined, that is regarded as substantially limiting a major life activity." *Id.* It would be premature, at this stage, for us to decide what the District Court has not: whether USMS believed that Fromm's hearing loss constitutes an impairment "substantially limiting a major life activity." Because this question goes to USMS's motivations and potential biases, it cannot be answered by resort to evidence of MVM's willingness to employ Fromm.

In order to prevail on a claim under the ADA, a claimant must prove that he is disabled within the meaning of the statute, proving that he has a physical impairment that limits a major life activity, has a record of such an impairment, or is "regarded as" having such an impairment. 42 U.S.C. § 12102(2); 29 U.S.C. § 705(20)(B). The appellants cannot prove that their impairments are not mitigated by corrective measures, thus barring a claim that they have impairments that limit a major life activity. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 487, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). Therefore, they can only prevail if they show that MVM "regarded" them as being impaired. To meet this standard, MVM must have "mistakenly believed that [the appellants] have a physical impairment that substantially limits one or more major life activities" or "mistakenly believed that an actual non-limiting impairment substantially limits one or more major life activities." *Id.* at 489, 119 S.Ct. 2139. It is insufficient for the appellants to show that MVM thought they were, in some way, impaired. Rather, the appellants must show that MVM thought they were disabled "within the meaning of the statute." *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 381 (3d Cir.2002).

In *Wilson*, we concluded that the undisputed evidence showed that MVM believed only that the claimants did not meet the requirements established by the Judicial Conference for service as a CSO. There was no evidence that they were regarded as having an impairment which "substantially limits one or more major life activities." *Id.* Summary judgment for MVM was accordingly appropriate. As the Supreme Court emphasized in *Murphy v. United Parcel Service, Inc.*, 527 U.S. 516, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999), a claimant must show that her employer regards her as substantially limited in a major life activity and not just unable to meet the requirements of a particular job.

Like the claimants in *Wilson*, Fromm does not claim to be actually disabled. His sole claim is that he was "regarded as" disabled. More specifically, in response to the following interrogatory, he gave the following answer:

*Interrogatory 8*

Identify what activity or activities you believe MVM erroneously regarded your hearing loss as limiting.

*Response*

Plaintiff's ability to perform the CSO responsibilities and duties.

App. at 350, 359.

MVM does not here dispute that it regards Fromm as unable to meet the requirements established by the Judicial Conference for service as a CSO, and the Court correctly concludes, as dictated by *Wilson*, that as a "matter of law, MVM did not regard [Fromm] as impaired within the meaning of the ADA." *Wilson*, 475 F.3d at 179.

After so concluding, the Court finds that this does not end the matter because Fromm, in his reply brief, suggests that the contractual relationship between MVM and the Marshals Service "has the effect of subjecting a[n] ... employee with a disability [*i.e.*, Fromm] to the discrimination prohibited by" the ADA in violation of 42 U.S.C. § 12112(b)(2). Reply Br. at 3. The problem with this newly conceived argument is, of course, that Fromm has tendered no evidence that either of the appellees regarded him as disabled within the meaning of the ADA. The undisputed evidence shows that the Marshals Service, like MVM, believed only that Fromm could not meet the requirements established by the Judicial Conference for service as a CSO. As with MVM, there is no evidence that the Marshals Service regarded

Fromm as having any impairment which "substantially limits one or more major life activities." Accordingly, § 12112(b)(2) does not alter the propriety of the summary judgment in favor of MVM.

Fromm appears to assume that the Medical Review Forms of the Marshals Service raise a genuine issue of material fact as to whether it believed he was substantially limited in a major life activity. Standing alone, however, Fromm's failure to meet the Marshals Service hearing standards does not raise a genuine issue of material fact as to whether the Marshals Service regarded that impairment as substantially limiting him in one or more major life activities. The Court of Appeals for the Ninth Circuit so held in *Walton v. U.S. Marshals Service,* 492 F.3d 998 (9th Cir.2007), a case indistinguishable from Fromm's and involving the same Judicial Conference requirements for CSO service.

In short, the Court today holds based on *Wilson* that, as a matter of law, MVM did not regard Fromm as impaired within the meaning of the ADA.[1] It nevertheless remands so that the District Court can consider whether the Marshals Service so regarded him. However, since the information available to the Marshals Service regarding Fromm's hearing was precisely the same as the information available to MVM, it necessarily follows from the Court's holding that the Marshals Service could not have regarded him as disabled within the meaning of the ADA. For that reason, I would affirm rather than remand for further proceedings.

---

1. Fromm's briefing does not purport to distinguish *Wilson.* Rather, he "respectfully submits that the *Wilson* panel erred in its interpretation of the ADA." Reply Br. at 3. Our panel cannot overrule *Wilson.*