FILED
**United States Court of Appeals**
**Tenth Circuit**

**March 31, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

STEVEN SCOTT SUCHAK,

    Plaintiff - Appellant,

v.

TEKSYSTEMS, INC.,

    Defendant - Appellee.

No. 25-6100
(D.C. No. 5:23-CV-00929-HE)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **MATHESON**, and **McHUGH**, Circuit Judges.
_____

Plaintiff-Appellant Steven Scott Suchak sued his former employer, Defendant-Appellee TEKSystems, Inc. ("TEK"), claiming multiple violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*. TEK, a staffing agency, employed Mr. Suchak and contracted him to work temporarily as a Data Center Technician for its client, Integris Health Baptist Medical Center ("Integris"). During Mr. Suchak's assignment, another company, Tech Mahindra, Inc. ("Mahindra") took over as Integris's Information Technology ("IT") manager. In September 2020 and again in April 2021, Mahindra requested that Mr. Suchak complete Form CC-305, a

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 2.1 and Tenth Circuit Rule 32.1.

Department of Labor form that invited him to voluntarily disclose his disability status. Mr. Suchak refused to fill out the form and filed a complaint with the Office of Federal Contract Compliance Programs ("OFCCP"). Several months later, Mr. Suchak's assignment with Integris expired and his employment with TEK was terminated.

Mr. Suchak sued TEK, alleging that Mahindra's requests to complete Form CC-305 were impermissible disability-related inquiries for which TEK was liable. He also alleged that TEK retaliated against him for filing an OFCCP complaint. The district court granted summary judgment in favor of TEK on all of Mr. Suchak's claims. Mr. Suchak now appeals. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.    BACKGROUND

### A.    *Factual History*[1]

TEK is in the business of supplying temporary staffing services on a contract basis to its clients. It recruits, hires, and assigns temporary employees to work at its clients' premises under the direction and supervision of the clients. TEK's temporary employees are employed at will, and clients can request to discontinue the employees' assignments at any time.

---

[1] The following facts are, unless otherwise specified, undisputed and come from TEK's statement of material facts provided in its motion for summary judgment. Because Mr. Suchak failed to "specifically controvert[]" TEK's statement of material facts, the district court accepted those facts as true for purposes of summary judgment. *See* LCvR56-1(c). We do the same in reviewing the district court's grant of summary judgment.

On May 12, 2020, Mr. Suchak entered into a written employment agreement with TEK to employ him as a Data Center Technician for TEK's client, Integris. The agreement provided that his employment with TEK "begins when [he] first begin[s] work for the Client on the Assignment, and ends if and when the Assignment is ended by the Client or otherwise." ROA at 129, 156.

Mr. Suchak began his assignment with Integris on May 26, 2020. The expected duration of the assignment was six months. But in August 2020, Integris introduced Mahindra as its IT Services Manager, tasked with managing IT work for Integris. After taking on this role, Mahindra extended Mr. Suchak's expected end date for his assignment through TEK to August 31, 2021.

Around September 2020, Mahindra requested Mr. Suchak complete the OFCCP's Form CC-305, Voluntary Self-Identification Disability Form, as part of the onboarding for his assignment with Mahindra. The OFCCP is the federal entity responsible for administering Section 503 of the Rehabilitation Act of 1973, which requires federal contractors to "take affirmative action to employ and advance in employment qualified individuals with disabilities." 29 U.S.C. § 793; 41 C.F.R. § 60-741.42. It created Form CC-305, which invites current or prospective employees to self-identify as individuals with disabilities. It allows employees to check one of three boxes: (1) "Yes, I Have A Disability, Or Have a History/Record Of Having A Disability"; (2) "No, I Don't Have A Disability, Or A History/Record Of Having A Disability"; or (3) "I Don't Wish To Answer." ROA at 189. The form also states,

"Identifying yourself as an individual with a disability is voluntary, and we hope that you will choose to do so." *Id.*

Mr. Suchak informed TEK that he objected to completing the form and that he suspected it was illegal for Mahindra to require him to do so. In response, TEK requested that Mahindra waive the requirement for Mr. Suchak. Mr. Suchak did not raise any further issues with TEK regarding Mahindra's request to complete the form at that time.

Around May 2021, Mahindra notified TEK that it had offered Mr. Suchak an internal position at Mahindra, which was tentatively set to begin after Mr. Suchak's temporary assignment through TEK expired on August 31, 2021. The new position "was separate and distinct from Mr. Suchak's assignment with [Mahindra] through TEK." ROA at 152. TEK had no control over the Mahindra position, and it was not "involved" in making the offer. *Id.* at 153.

In June 2021, Mr. Suchak informed TEK that Mahindra was requiring him to complete Form CC-305 as a condition of his future employment with Mahindra. In response, TEK informed Mr. Suchak that Mahindra's onboarding documents were not associated with TEK or with Mr. Suchak's employment with TEK. A TEK employee informed Mr. Suchak, "[TEK] has no involvement with the internal position that you are seeking with [Mahindra] and [TEK] is not involved in the presentation, oversight, or completion of any paperwork, training, or any other requirements of the internal position as they are not requirements of your employment with [TEK]." ROA at 160.

4

On June 30, 2021, TEK learned that Mahindra had withdrawn its offer of employment to Mr. Suchak and that Mr. Suchak's assignment with Mahindra was not expected to extend beyond the August 31, 2021 end date. Mr. Suchak's assignment at Mahindra ended on August 31, 2021. Pursuant to his employment agreement with TEK, Mr. Suchak's employment with TEK ended on the same date. TEK claimed no involvement in Mahindra's withdrawal of Mr. Suchak's offer of employment for the internal Mahindra position. TEK also denied making any employment decisions with respect to Mr. Suchak based on his refusal to complete Form CC-305 as requested by Mahindra in 2021.

After Mr. Suchak's termination, TEK did not backfill his position and Mahindra did not request that TEK backfill his position. Mr. Suchak remains eligible for employment with TEK, and TEK has continued to communicate with Mr. Suchak regarding potential assignments.

### B.    *Procedural History*

In July 2021, shortly after TEK learned that Mr. Suchak's contract with Mahindra would not be extended, TEK received notice that Mr. Suchak had filed a complaint with the OFCCP against both Mahindra and TEK. In the complaint, Mr. Suchak alleged that the companies discriminated against him on the basis of disability by taking adverse actions in retaliation for his refusal to complete Form CC-305. He claimed that Mahindra sent him "over 250 emails every day since Sept[ember] 2020 requesting [him] to fill out the CC-305." *Id.* at 197.

In March 2022, Mr. Suchak filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against Integris, Mahindra, and TEK alleging disability discrimination and retaliation. He identified the dates of discrimination as June 1, 2021, through August 31, 2021. In the charge, Mr. Suchak alleged that he was unlawfully required to complete Form CC-305 after being offered a permanent position with Mahindra in 2021. He alleged that because he refused to complete the form, "he not only lost the promotion that he had been offered, but his current contract was allowed to expire, when all other similarly situated employees were able to continue working at Integris." *Id.* at 184.

In October 2023, Mr. Suchak filed a lawsuit against TEK in the United States District Court for the Western District of Oklahoma alleging violations of the ADA. Mr. Suchak claimed that TEK discriminated against him under the ADA by "unlawfully requir[ing] [him] to reveal information pertaining to [his] status as one either having or not having a disability as a condition of employment." *Id.* at 13. His claims were based on two sets of inquiries: Mahindra's request to complete Form CC-305 in September 2020 as a condition of his extension of his TEK contract with Integris (the "2020 inquiry"); and Mahindra's request to complete Form CC-305 in April 2021 as a condition of his offer of a permanent position with Mahindra (the "2021 inquiry"). He alleged that he suffered adverse actions because of his refusal to complete the form, including being discharged from his employment with TEK and having his offer for a full-time position with Mahindra withdrawn. Second, Mr. Suchak claimed that TEK unlawfully retaliated against him in violation of the

6

ADA by subjecting him to adverse employment actions because he filed a complaint with the OFCCP.

TEK moved for summary judgment on all of Mr. Suchak's claims. Mr. Suchak, appearing pro se, opposed the motion.

The district court granted summary judgment in favor of TEK on all of Mr. Suchak's claims. As to Mr. Suchak's claim of ADA discrimination based on the 2020 inquiry, the court concluded that Mr. Suchak had not "presented sufficient evidence to raise a genuine issue of material fact that he exhausted his administrative remedies with respect to that alleged impermissible disability-related inquiry." *Id.* at 241. It noted that Mr. Suchak's "factual statements" and "reference[s] to documents" in his response brief were not "record evidence" sufficient to show exhaustion of remedies. *Id.* Alternatively, the court determined that even if Mr. Suchak had exhausted his remedies as to the 2020 inquiry claim, summary judgment was still appropriate because Mr. Suchak did not show that TEK "discriminated against him because of his disability," which is required for entitlement to compensatory and punitive damages. *Id.* at 242.

As to the 2021 inquiry claim, the district court assumed without deciding that Form CC-305 constituted an impermissible disability-related inquiry. It acknowledged that under 29 C.F.R. § 1630.6 and 42 U.S.C. § 12112(b)(2), "an employer 'may not do through a contractual or other relationship what it is prohibited from doing directly.'" *Id.* at 240 (quoting *Fromm v. MVM, Inc.*, 371 F. App'x 263, 270–71 (3d Cir. 2010) (unpublished)). But it noted that, in an exception to that

7

general rule, "an employer is not liable for the actions of the party 'to the contract which only affect that other party's employees or applicants.'" *Id.* (quoting 29 C.F.R. § 1630.6(c)). The district court concluded that because Mr. Suchak was "only an applicant of [Mahindra]" as to the internal position with Mahindra, TEK was "not liable for the alleged impermissible disability-related inquiry." *Id.* at 241.

As to Mr. Suchak's retaliation claim, the district court determined that Mr. Suchak "raise[d] a genuine issue of material fact as to whether plaintiff exhausted his administrative remedies." *Id.* at 244. The court then addressed the merits of the retaliation claim, applying the *McDonnell-Douglas* burden-shifting framework. *See McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). At the first step of the analysis, the district court concluded that "[t]he record evidence, viewed in plaintiff's favor, raise[d] a genuine issue of material fact as to each of the prima facie elements" of an ADA retaliation claim. ROA at 245. At the second step, the court found that TEK had offered a legitimate, non-retaliatory reason for Mr. Suchak's termination: his "temporary assignment with [Mahindra] expired." *Id.* At the third step, the district court concluded that "the record evidence [wa]s insufficient to raise a genuine issue of material fact as to pretext." *Id.* at 245–46. Therefore, the court concluded that TEK was entitled to summary judgment on Mr. Suchak's retaliation claim.

The district court entered judgment in favor of TEK and against Mr. Suchak on all his claims. Mr. Suchak filed a Federal Rule of Civil Procedure 59(e) motion to alter or amend the judgment, arguing that the district court erred in granting TEK's

motion for summary judgment. The district court denied the motion. This appeal followed.

## II.    DISCUSSION

Mr. Suchak contends the district court erred in granting TEK's motion for summary judgment on his disability-related inquiry claims and his retaliation claim. We review a district court's grant of summary judgment de novo, applying the same legal standard used by the district court. *GeoMetWatch Corp. v. Behunin*, 38 F.4th 1183, 1200 (10th Cir. 2022). "Summary judgment is appropriate when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Dullmaier v. Xanterra Parks & Resorts*, 883 F.3d 1278, 1283 (10th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). A fact is only "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "In conducting our analysis, we view all of the facts in the light most favorable to the non-movant and draw all reasonable inferences from the record in favor of the non-moving party." *Young v. Dillon Companies, Inc.*, 468 F.3d 1243, 1249 (10th Cir. 2006). Where the nonmoving party will bear the burden of proof at trial, the party seeking summary judgment bears the initial burden of "pointing out to the district court [] that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, then the burden shifts to the

nonmoving party to point out "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks and emphasis omitted).

### A.     Impermissible Inquiry Claims

The ADA prohibits an employer from making "inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability" unless the "inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). Likewise, the ADA prohibits an employer from making such "inquiries of a job applicant" except to inquire "into the ability of an applicant to perform job-related functions." *Id.* § 12112(d)(2). A plaintiff asserting an impermissible inquiry claim must show (1) he is an employee or job applicant of the defendant-employer, and (2) the defendant-employer made a disability-related inquiry of him. *See Williams v. FedEx Corp. Servs.*, 849 F.3d 889, 901 (10th Cir. 2017). "[A] plaintiff need not prove that he is disabled" to recover under this provision. *Id.*

The parties dispute whether Form CC-305 constitutes an impermissible disability-related inquiry. We assume without deciding that Mahindra's 2020 and 2021 inquiries were impermissible under the ADA. Even assuming the inquiries were unlawful, we conclude that TEK is entitled to summary judgment on Mr. Suchak's impermissible inquiry claims for the reasons explained below.

1.      **The 2020 Inquiry Claim**

Mr. Suchak argues that the district court erred in granting summary judgment on Mr. Suchak's claim related to the 2020 inquiry for two reasons. First, he argues that his OFCCP complaint was sufficient to show that he exhausted his administrative remedies. Second, he argues that the court committed legal error by requiring Mr. Suchak to show that TEK intentionally discriminated against him on the basis of disability.

Ultimately, however, we need not address Mr. Suchak's arguments. TEK is entitled to summary judgment on Mr. Suchak's 2020 inquiry claim on the alternative basis that Mr. Suchak did not suffer an injury stemming from the inquiry. *See Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1180 (10th Cir. 2018) ("In reviewing a grant of summary judgment, . . . . we can affirm on any ground supported by the record, so long as the appellant has had a fair opportunity to address that ground." (internal quotation marks omitted)).

To recover compensable damages for an impermissible disability-related inquiry, a plaintiff must "prove injury flowing from" the impermissible inquiry. *See Griffin v. Steeltek, Inc.*, 160 F.3d 591, 595 n.5 (10th Cir. 1998); *see also Garrison v. Baker Hughes Oilfield Operations, Inc.*, 287 F.3d 955, 963 (10th Cir. 2002) ("[T]o recover compensatory damages under § 12112(d)(2), a plaintiff need only 'prove injury flowing from' the statutory violation . . . ."); *Griffin v. Steeltek, Inc.*, 261 F.3d 1026, 1028 (10th Cir. 2001) ("ADA claimant must establish a 'tangible injury' caused by technical violation of § 12112(d) in order to recover compensatory

11

damages" (citing *Cossette v. Minn. Power & Light*, 188 F.3d 964, 971 (8th Cir.1999))). "[M]erely being ask[ed] the impermissible question is not sufficient, by itself, to inflict a cognizable injury." *Griffin*, 261 F.3d at 1028. But here, Mr. Suchak fails even to allege an injury flowing from the 2020 inquiry, much less identify record evidence raising a genuine dispute of fact as to its existence. And a review of the record reveals no evidence that Mr. Suchak suffered a tangible injury from the 2020 inquiry. On the contrary, it is undisputed that after Mr. Suchak complained to TEK that Mahindra asked him to complete Form CC-305 in September 2020, TEK asked Mahindra to waive the requirement for Mr. Suchak. After that, Mr. Suchak continued his employment with Mahindra for an additional eleven months until the expiration of his temporary assignment. Indeed, according to Mr. Suchak's own allegations, Mahindra offered Mr. Suchak a full-time position and a substantial raise seven months *after* the 2020 inquiry, despite Mr. Suchak's refusal to complete Form CC-305. From this evidence, no reasonable jury could find that Mr. Suchak suffered a cognizable injury stemming from the 2020 inquiry.

Instead of pointing to evidence of an injury, Mr. Suchak contends he is "entitled to punitive damages, which do not require tangible injury." Reply Br. at 8–9. But this argument is precluded by our caselaw. In *Griffin*, the plaintiff, like Mr. Suchak, argued he was entitled to a jury determination on the issue of punitive damages for an impermissible disability-related inquiry even though a jury found he suffered no actual damages from the violation. 261 F.3d at 1027–28. We rejected the plaintiff's theory and held that "absent an injury, [a plaintiff] [i]s not entitled to . . .

punitive damages." *Id*. at 1028. Here too, because Mr. Suchak did not present any evidence of an injury stemming from the 2020 inquiry, he is not entitled to punitive damages as a matter of law.

In sum, there is no genuine issue of fact as to whether Mr. Suchak suffered an injury from the 2020 inquiry. He thus cannot prevail on his claim for compensatory or punitive damages. Accordingly, we affirm the district court's grant of summary judgment on Mr. Suchak's 2020 inquiry claim.

### 2.    2021 Inquiry Claim

Mr. Suchak next claims the district court erred in granting summary judgment on Mr. Suchak's claim related to the 2021 inquiry. Although Mahindra made the inquiry, Mr. Suchak argues TEK was liable for Mahindra's conduct by virtue of its relationship with Mr. Suchak and with Mahindra.

The ADA provides that an employer may not "participat[e] in a contractual or other arrangement or relationship that has the effect of subjecting a covered entity's qualified applicant or employee with a disability to the discrimination prohibited by" the ADA. 42 U.S.C. § 12112(b)(2); *see also* 29 C.F.R. § 1630.6(a) (same). This provision reflects the principle that "an employer 'may not do through a contractual or other relationship what it is prohibited from doing directly.'" *Keneipp v. MVM, Inc.*, 267 F. Supp. 3d 1317, 1323–24 (N.D. Okla. 2017) (quoting *Fromm*, 371 F. App'x at 270–71). In the context of staffing agencies like TEK, this means that a staffing agency is liable for a client's discrimination if the agency either "participate[d] in the client's discrimination" or "knew or should have known about

the client's discrimination and failed to undertake prompt corrective measures within its control." EEOC Enforcement Guidance, Application of EEO Laws to Contingent Workers Placed By Temporary Employment Agencies and Other Staffing Firms (Dec. 3, 1997), 1997 WL 33159161, at *11 [hereinafter EEOC Employment Agency Enforcement Guidance].

### a.    Participation

Mr. Suchak argues that the district court erroneously resolved a dispute of material fact as to whether TEK participated in Mahindra's 2021 inquiry and conversion offer. For the first time on appeal, he points to several pieces of evidence that, in his view, show "that TEK was directly involved in converting Mr. Suchak's employment from a temporary position to a permanent position with Mahindra," Appellant's Br. at 38, including: (1) Mr. Suchak's employment contract with TEK; (2) email communications showing that TEK received Mr. Suchak's complaints about Mahindra's request to complete Form CC-305; and (3) an internal communication log in which a TEK employee noted he was "[w]orking through [Mr. Suchak's] . . . conversion work to [Mahindra]." ROA at 176.

Because Mr. Suchak did not present these arguments or cite this evidence before the district court, however, he cannot now rely on them to support his claim of error on appeal. We conduct our de novo review of a summary judgment decision "from the perspective of the district court at the time it made its ruling, ordinarily limiting our review to the materials adequately brought to the attention of the district court by the parties." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th

14

Cir. 1998). "[W]here the burden to present . . . specific facts by reference to exhibits and the existing record was not adequately met below, we will not reverse a district court for failing to uncover them itself." *Id*. at 672.

Further, even if we were to consider Mr. Suchak's new arguments, the evidence he cites does not raise a genuine dispute of fact as to whether TEK participated in Mahindra's 2021 inquiry. For instance, Mr. Suchak points to his employment contract with TEK as evidence that TEK was involved in converting Mr. Suchak to a permanent position with Mahindra. He notes that the agreement states that Mr. Suchak's employment with TEK "ends if and when the [a]ssignment is ended by" Mahindra. ROA at 156. But Mr. Suchak does not explain how this provision supports his theory. Indeed, the agreement tends to undermine Mr. Suchak's contention that TEK had control over Mr. Suchak's potential conversion because it contemplates that Mahindra—rather than TEK—controls the continuation or termination of Mr. Suchak's assignment.

The TEK emails and communication logs Mr. Suchak cites are equally unhelpful to his position. The cited documents do not show that TEK asked Mr. Suchak to complete Form CC-305, represented to Mr. Suchak that doing so was a condition for his continued employment with TEK, or implied that it had any authority over Mahindra's offer of conversion or associated paperwork. To the contrary, the communication logs cited by Mr. Suchak note that TEK told Mr. Suchak that "it was not TEK who required" completion of the form. ROA at 178.

15

Likewise, an email to Mr. Suchak from a TEK employee informed him that his completion of Form CC-305 was "not a requirement" for TEK. *Id.* at 160.

Mr. Suchak points to an entry in TEK's communication log stating that a TEK employee was "[w]orking through" Mr. Suchak's "conversion work" for Mahindra as evidence that TEK was involved in Mahindra's offer of conversion. ROA at 176. But the note does not describe what the conversion work entailed, nor does it suggest that TEK had control or influence over Mahindra's decision to hire Mr. Suchak as a permanent employee. Nor does it contain any evidence that could support a finding that TEK could relieve Mr. Suchak of Mahindra's requirement that he complete Form CC-305. We therefore disagree that this solitary note creates a triable issue of fact as to TEK's participation in Mahindra's conversion offer.

In sum, even if we were to consider the new evidence Mr. Suchak cites on appeal, no reasonable juror could conclude on this record that TEK participated in Mahindra's 2021 inquiry related to its offer of conversion.

b.      *Failure to take corrective action*

Next, Mr. Suchak contends that TEK is liable for Mahindra's 2021 inquiry because "TEK 'knew or should have known' about Mahindra's impermissible inquiry 'and failed to take corrective action.'" Appellant's Br. at 42 (quoting EEOC Employment Agency Enforcement Guidance, 1997 WL 33159161, at *11).

Although the record indicates that TEK knew about Mahindra's 2021 inquiry, it does not support that TEK failed to take corrective measures within its control. Rather, undisputed evidence in the record shows that TEK was not involved in

Mahindra's decision to offer Mr. Suchak a permanent internal position and had no control or oversight over the paperwork associated with Mahindra's offer of conversion.

Mr. Suchak resists this conclusion, arguing that TEK could have asked Mahindra to waive the Form CC-305 requirement as it did in September 2020 when Mahindra extended Mr. Suchak's assignment through TEK. But no evidence suggests that TEK had the authority to request such a waiver from Mahindra in 2021. In September 2020, Mahindra asked Mr. Suchak to fill out the form to continue his assignment with Integris through TEK—an arrangement in which TEK was plainly involved. Thus, TEK had the authority to request a waiver in September 2020 because the form was being requested as a prerequisite for Mr. Suchak's continued employment with TEK. In contrast, the 2021 inquiry concerned Mr. Suchak's eligibility for an internal position with Mahindra. And the undisputed facts here establish that TEK had no role in that hiring decision and no control over the application or onboarding paperwork. Indeed, TEK's relationship with Mr. Suchak would have ended had Mr. Suchak successfully converted to a fulltime Mahindra employee. Thus, no evidence suggests that TEK had the authority to request a waiver of the form in 2021.

Accordingly, no reasonable juror could find on this record that TEK failed to take corrective measures within its control in response to Mahindra's 2021 inquiry.

17

c.    *Application of 29 C.F.R. 1630.6(c)*

Finally, Mr. Suchak argues that the district court erred in concluding that TEK was not liable for Mahindra's 2021 inquiry under 29 C.F.R. § 1630.6. That regulation states that "[i]t is unlawful for a covered entity to participate in a contractual or other arrangement or relationship that has the effect of subjecting the covered entity's own qualified applicant or employee with a disability to the discrimination prohibited by" the ADA. 29 C.F.R. § 1630.6(a). But an exception provides that an employer is "not liable for the actions of the other party or parties to the contract which only affect that other party's employees or applicants." *Id.* § 1630.6(c). The district court granted summary judgment to TEK in part based on this exception, concluding that as to Mahindra's offer of conversion, Mr. Suchak was "only an applicant" of Mahindra, and TEK was therefore not liable for the alleged 2021 inquiry associated with the offer of conversion. ROA at 241.

Mr. Suchak argues that the district court erroneously analyzed the claim as if Mr. Suchak was an "applicant" of only Mahindra, when in fact he was an "employee" of both Mahindra and TEK, in applying 29 C.F.R. § 1630.6(c). But even if we assume Mr. Suchak is correct that he should be considered an employee of both TEK and Mahindra, his argument fails. The record establishes that Mahindra's hiring and onboarding process for the internal position was entirely separate and distinct from Mr. Suchak's employment with TEK. Thus, because the 2021 inquiry was a prerequisite for Mahindra's internal hiring process, it had no impact on Mr. Suchak's relationship with TEK. Accordingly, regardless of whether Mr. Suchak is considered

18

an employee or an applicant of Mahindra, the inquiry "only affect[ed] [Mahindra's] employees or applicants." *See* 29 C.F.R. § 1630.6.

Mr. Suchak urges us to read § 1630.6 more broadly. He argues "[t]he district court's characterization of TEK as Mr. Suchak's employer *at the time of* the conversion but not *for the purposes* of the conversion was . . . contrary to Congress's intent that the ADA's protections be broadly applied." Reply Br. at 15. We decline to adopt such an expansive reading of the regulation. Mr. Suchak's proposed reading of § 1630.6 would effectively hold staffing agencies strictly liable for actions of their clients toward the staffing agencies' employees, even where the staffing agency had no involvement in or control over the challenged conduct. This is contrary to EEOC guidance, which limits a staffing agency's liability to circumstances in which the staffing agency "participates in the client's discrimination" or "knew or should have known about the client's discrimination and failed to undertake prompt corrective measures within its control." *See* EEOC Employment Agency Enforcement Guidance, 1997 WL 33159161, at *11. We therefore conclude that TEK is not liable for Mahindra's 2021 inquiry under § 1630.6(c) because the 2021 inquiry was separate from—and did not alter—the employment relationship between Mr. Suchak and TEK.

Because Mr. Suchak has failed to demonstrate a genuine issue of fact as to TEK's liability for Mahindra's 2021 inquiry, his claim fails as a matter of law. We therefore affirm the district court's grant of summary judgment on Mr. Suchak's claim related to the 2021 inquiry.

19

## B.    Retaliation Claim

Mr. Suchak next contends that the district court erred in granting summary judgment in favor of TEK on his retaliation claim. The ADA prohibits retaliation against employees who engage in protected activities under the ADA. Specifically, it states that employers may not "discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or . . . made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]." 42 U.S.C. § 12203(a). Where, as here, there is no direct evidence of the defendant's retaliation, the court applies the *McDonnell-Douglas* burden-shifting framework to evaluate the retaliation claim. The first step of the framework requires the plaintiff to establish a prima facie case of retaliation by demonstrating that "(1) he engaged in protected opposition to discrimination; (2) a reasonable employee would have found his employer's subsequent action to be materially adverse; and (3) a causal connection exists between his protected activity and the employer's action." *Lincoln*, 900 F.3d at 1209 (quotation marks and brackets omitted).

"If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions." *Williams*, 849 F.3d at 896 (internal quotation marks omitted). "The defendant's burden at this stage is one of production, not one of persuasion." *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 539 (10th Cir. 2014) (quotation marks omitted).

20

If the defendant meets this burden, "the burden shifts back to the plaintiff to show that the defendant's stated reasons are merely pretextual." *Williams*, 849 F.3d at 896 (quotation marks omitted). "A plaintiff demonstrates pretext by showing either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence." *Smothers*, 740 F.3d at 539 (quotation marks and brackets omitted). "When a plaintiff demonstrates that an employer's proffered reasons are unworthy of credence, a jury may infer the ultimate fact of . . . retaliation." *Id.* at 546 (internal quotation marks omitted).

Mr. Suchak argues that the district court erred at each step of this analysis. We discuss each step in turn.

## 1.    Prima Facie Case

Mr. Suchak claims that after he refused to complete Form CC-305 and filed an OFCCP complaint, he suffered three adverse actions sufficient to make out a prima case of retaliation: (1) Mahindra withdrew his offer of conversion to a permanent internal position; (2) Mahindra did not extend or renew his assignment through TEK; and (3) TEK terminated his employment. Mr. Suchak argues that the district court erred by considering only TEK's termination of Mr. Suchak in analyzing his retaliation claim. He contends that the court should also have considered the two adverse actions taken by Mahindra. But Mr. Suchak has not persuaded us that TEK may be held liable for all three adverse actions.

Mr. Suchak first argues that TEK is liable for Mahindra's decision to withdraw its offer to convert Mr. Suchak to a permanent internal employee under 42 U.S.C.

§ 12112(b)(2) and 29 C.F.R. § 1630.6. As explained, these provisions forbid TEK from engaging in a contractual arrangement that has the effect of subjecting its own employees to retaliation prohibited by the ADA. *See* 42 U.S.C. § 12112(b)(2); 29 C.F.R. § 1630.6(a). This theory fails, however, because the record contains no evidence that TEK had any control over Mahindra's conversion offer or its revocation of the same. Thus, even assuming Mahindra revoked the offer of conversion in retaliation for Mr. Suchak's protected activity and TEK knew about it, no reasonable jury could find that TEK participated in the retaliation or failed to take corrective action within its control. *See* EEOC Employment Agency Enforcement Guidance, 1997 WL 33159161, at *11. Accordingly, TEK cannot be held liable for Mahindra's decision to withdraw Mr. Suchak's conversion offer.

Mr. Suchak next argues that TEK is liable for Mahindra's failure to extend or renew Mr. Suchak's assignment under a joint-employer theory of liability. Because Mr. Suchak did not raise this argument before the district court, it is reviewable only for plain error. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011). But Mr. Suchak did not raise a plain-error argument on appeal. "When an appellant fails to preserve an issue and also fails to make a plain-error argument on appeal, we ordinarily deem the issue waived (rather than merely forfeited) and decline to review the issue at all—for plain error or otherwise." *United States v. McBride*, 94 F.4th 1036, 1044 (10th Cir. 2024) (quotation marks omitted); *see also Richison*, 634 F.3d at 1131 ("[T]he failure to argue for plain error and its application on appeal—surely marks the end of the road for an argument for reversal not first

presented to the district court.""). Because Mr. Suchak failed to preserve his joint-employer theory before the district court and failed to argue plain error before this court, we treat his argument as waived.

Accordingly, we conclude that the district court did not err in considering only one adverse action—TEK's termination of Mr. Suchak—in analyzing Mr. Suchak's retaliation claim. As to Mr. Suchak's termination, both parties agree, as did the district court, that TEK's termination of Mr. Suchak in close proximity to Mr. Suchak's filing of an OFCCP complaint was sufficient to establish a prima face case of retaliation.

### 2.     Proffered Rationale

Because Mr. Suchak established a prima facie case of retaliation, the burden shifted to TEK to articulate a legitimate, nonretaliatory reason for terminating Mr. Suchak. The district court concluded that TEK met its burden by demonstrating that TEK terminated Mr. Suchak because his "temporary assignment with [Mahindra] expired." ROA at 245. We agree.

The record supports that Mr. Suchak's employment with TEK ended as the result of his assignment with Mahindra ending on August 31, 2021. The employment agreement between Mr. Suchak and TEK provided that Mr. Suchak's employment with TEK was "co-extensive" with his assignment at Integris, and that his employment would end "if and when the Assignment is ended by the Client or otherwise." ROA at 156. The end date for Mr. Suchak's assignment with Integris was August 31, 2021. And the record establishes that when Suchak's temporary

23

assignment ended on August 31, 2021, his employment with TEK also ended. Because the employment agreement by its own terms provided for Mr. Suchak's termination at the expiration of his assignment, TEK proffered a legitimate, non-retaliatory reason for terminating Mr. Suchak.

Mr. Suchak resists this conclusion, arguing that TEK's proffered rationale was not legitimate because "the only reason Mahindra failed to extend or renew its term was in retaliation for his objections to Mahindra's impermissible disability-related inquiries." Appellant's Br. at 53–54. Since "an employment agency cannot do through contract what it is prohibited from doing directly," Mr. Suchak contends that TEK's proffered rationale for terminating Mr. Suchak is not legitimate. *Id.* at 54.

Mr. Suchak relies chiefly on *Keneipp v. MVM, Inc.*, 267 F. Supp. 3d 1317 (N.D. Okla. 2017), to support his argument. But Mr. Suchak's reliance on *Keneipp* is misplaced. In that case, the defendant-employer, MVM, contracted with the United States Marshalls Service ("USMS") to provide security officers, and it employed the plaintiff, Mr. Keneipp, in that capacity. *Id.* at 1319. After Mr. Keneipp underwent a medical exam that revealed he had sciatica and back pain, USMS directed MVM to terminate him. *Id.* at 1319–20. MVM did so despite knowing that Mr. Keneipp could perform the essential functions of his job. *Id.* at 1320. In his termination letter, MVM informed Mr. Keneipp that it was terminating his employment "based on [his] medical issues." *Id.* At summary judgment, however, MVM claimed that it did not terminate him based on his medical condition. Instead, it argued that it had a legitimate and non-discriminatory reason for Mr. Keneipp's termination because

24

USMS had demanded his termination, and by the terms of its contract with USMS, MVM had no choice but to terminate Mr. Keneipp. *See id*. at 1323. The district court rejected MVM's argument, finding that MVM could not use its contract with USMS "as a shield" to protect itself from liability for discrimination. *Id.*

The facts of *Keneipp* differ from Mr. Suchak's case in several important ways. Here, unlike in *Keneipp*, TEK did not adopt or endorse Mahindra's retaliatory motive for terminating Mr. Suchak. Indeed, there is no record evidence demonstrating TEK was aware of Mahindra's reasons—retaliatory or otherwise—for declining to extend Mr. Suchak's assignment through TEK. Although the record shows that TEK eventually became aware that Mr. Suchak's assignment with Mahindra "[wa]s not going to get extended," ROA at 176, the evidence does not establish that TEK knew Mahindra's failure to extend the assignment was retaliatory. Nor does Mr. Suchak identify any evidence from which TEK should have inferred that Mahindra's conduct was retaliatory. For example, the evidence did not show that Mahindra requested TEK backfill Mr. Suchak's position after ending his assignment or that Mahindra extended assignments for similarly situated individuals. Accordingly, *Keneipp* does not support Mr. Suchak's position that TEK's proffered rationale for terminating Mr. Suchak—the end of his assignment with Mahindra—is illegitimate.

We therefore conclude that the district court did not err in finding that TEK satisfied its burden of showing a legitimate, non-retaliatory reason for terminating Mr. Suchak under the *McDonnell-Douglas* framework.

25

### 3.    Pretext

Because TEK articulated a legitimate, nonretaliatory reason for terminating Mr. Suchak, the burden shifted back to the plaintiff to show that TEK's stated reason is pretext for unlawful retaliation. *McDonnell Douglas*, 411 U.S. at 802–04. Mr. Suchak contends that the district court erred in concluding that the record evidence here was insufficient to raise a genuine issue of material fact as to pretext. He argues, "TEK contradicted itself with its own evidence on two occasions, such that a reasonable jury could find its reason unworthy of belief." Appellant's Br. at 58. None of Mr. Suchak's arguments, however, are persuasive.

First, Mr. Suchak points to a September 2020 email exchange between himself and a TEK employee. In that exchange, Mr. Suchak complained to TEK about Mahindra's September 2020 request to complete Form CC-305. TEK responded that it "ask[ed] [Mahindra] if they could waive this requirement for you" and stated that it "informed [Mahindra] that you were told that it was illegal for the form to be a requirement." *Id.* at 190. Mr. Suchak argues that TEK's failure to request a similar waiver in 2021 shows a "sudden change[] of position" from which a jury could infer that "TEK's stated reason for firing Mr. Suchak was merely pretext." Appellant's Br. at 59.

Because Mr. Suchak did not raise this argument before the district court or argue plain error on appeal, the argument is waived. *Richison*, 634 F.3d at 1131. But even if we were to consider this evidence, the email exchange he identifies does not create a triable issue of fact as to pretext. TEK's failure to request a waiver in 2021

26

does not suggest a "sudden change in position" on TEK's part, as the circumstances surrounding the request were materially different. As we explained above, undisputed evidence shows that TEK had "no involvement" with Mahindra's offer of conversion. Thus, while TEK had authority to request a waiver of Form CC-305 in September 2020, there is no evidence that it had the authority to request a waiver in April 2021.

Second, Mr. Suchak argues that TEK's failure to place him in a new assignment after August 2021 demonstrates pretext. But this unsupported claim is insufficient to raise a genuine dispute of fact. Undisputed evidence in the record shows that TEK has communicated with Mr. Suchak regarding various potential placements in the years since April 2021. And Mr. Suchak points to no record evidence suggesting that TEK's efforts were deficient, that similarly situated individuals were treated differently, or that positions for which he was qualified were withheld from him. Absent such evidence, a reasonable jury could not infer from Mr. Suchak's lack of further assignments that TEK's proffered rationale for his termination was pretextual.

Because Mr. Suchak has not identified record evidence from which a reasonable jury could conclude that TEK's proffered reason for Mr. Suchak's termination was pretext for retaliation, we affirm the district court's grant of summary judgment in favor of TEK.

27

## III.    CONCLUSION

For the reasons explained above, we AFFIRM in full the district court's order granting summary judgment in favor of TEK.

Entered for the Court


Carolyn B. McHugh
Circuit Judge